UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

ANDREW JOHNSON,

                Plaintiff,

       - against -

NEW YORK STATE DEP'T OF PAROLE, et al.,

                Defendants.

10 Civ. 2553 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

    Plaintiff Andrew Johnson ("Johnson") brings this complaint pursuant to 42 U.S.C. § 1983 against the New York State Division of Parole ("the Division"), New York State Board of Parole Chairwoman Andrea Evans ("Evans"), Parole Officer Daina Estwick ("Estwick"), Parole Officer D. Babb ("Babb"), and an unknown individual identified as "M. Rose." Johnson filed this complaint on March 22, 2010. All defendants but "M. Rose" moved to dismiss or, in the alternative, for summary judgment on July 13, 2010. To date, Johnson has not filed an opposition to this motion.

    On October 5, 2010, the Court issued an order instructing Johnson to demonstrate that he had served process upon "M. Rose" within 120 days of filing his complaint or to demonstrate that he failed to do so for good cause. Johnson did not respond to this order, and copies of this

order sent to Johnson's last known address were returned by the post office.  On October 29, 2010, defendants' counsel informed the Court that Johnson had apparently absconded from the jurisdiction in connection with possible parole violations.  Counsel estimated that Johnson had done so after defendants filed their motion, but before the Court issued its October 5, 2010 order.  For the reasons stated below, the defendants' unopposed motion is granted in its entirety.

## BACKGROUND

The following facts are taken from the complaint and from the defendants' unopposed motion for summary judgment.

During the time when the relevant events occurred, Johnson was on parole supervision.  Between August and November 2009, Johnson violated the conditions of his parole on numerous occasions by, for example, testing positive for cocaine; failing to report to Estwick, his parole officer; testing positive for marijuana; and not being present at his residence during curfew hours.  During this time period, Johnson informed Estwick that he suffered from a mental disorder and was prescribed several medications by a psychiatrist.  Estwick asked Johnson for documentation of his mental disorder, but Johnson never produced it.

Eventually, Johnson was offered the opportunity to enroll in the Edgecombe Program, a residential program for parolees with substance abuse problems, rather than having parole revocation proceedings initiated against him.  Johnson had previously attended this program in August 2009.  He agreed to enter into the program again.

During Johnson's intake into Edgecombe, he met with Babb.  He informed Babb that he suffered from a mental disorder and had been prescribed medication.  He did not document this mental disorder and stated that he had voluntarily stopped taking his medication in order to participate in Edgecombe.  Babb discussed Johnson with her supervisor, and her supervisor

determined that Johnson should be allowed to remain in Edgecombe.  Johnson alleges that Babb and Estwick's decision to allow Johnson to enroll in Edgecombe, knowing that he suffered from a mental disorder, constituted cruel and punishment.

On November 23, 2009, Johnson was placed on quarantine at Edgecombe because he was suffering from flu-like symptoms.  Johnson alleges that he wrote a letter to Evans while he was on quarantine complaining of the fact that he needed mental health treatment.  (Pl.'s Compl. 3.)  The defendants have produced a copy of the letter that Johnson wrote.  (Biesty Decl., Ex. 1.)  It is actually addressed to "Mrs Washington Superintendent."  (*Id.*)  Johnson described his experience on quarantine as follows:  "I was a mentally tormented sitting in a quarantine cell during thanksgiving no one to talk to about the my depression . . . ."  (Pl.'s Compl. 3.)

On November 30, 2009, Johnson was discharged from Edgecombe because the facility was unable to provide him with mental health care.  Shortly thereafter, parole revocation proceedings were initiated against Johnson.  Rather than being incarcerated, Johnson was enrolled in another residential substance abuse program.

## STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact.  *See* Fed. R. Civ. P. 56(c).  The burden to show the absence of a genuine factual dispute falls on the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A dispute regarding a fact is genuine if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003).  In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the

party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." *Wevant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

Even where, as here, the non-moving party does not respond to the motion for summary judgment, the court may not grant the motion by default. Although the non-movant's failure to respond "may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal citations and quotation marks omitted). Accordingly, in reviewing a motion for summary judgment—even one that is unopposed—the court must "determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.* (internal quotation marks omitted).

## DISCUSSION

### I. Claims against Evans

Johnson alleged that Andrea Evans, the Commissioner of the New York State Board of Parole, violated his rights. He appears to claim that he wrote Evans a letter during the time he was quarantined describing the treatment he received and that she did not act on this letter. Johnson has presented the Court with no evidence that he wrote such a letter. The defendants, in contrast, have presented a letter dated November 24, 2009 addressed to "Mrs Washington superintendent" [sic] written by Johnson, describing his medical disorder and complaining that the facility cannot accommodate his needs. (Biesty Decl., Ex. 1.) Based on the evidence before it, the Court concludes that Johnson has misidentified his correspondent. There is no basis to

believe that Evans was at all involved in the incidents that Johnson describes. As such, defendants' motion for summary judgment with respect to all claims against Evans is granted.

### II. Claims against "M. Rose"

The Court notes that attorneys have filed an appearance for all defendants in this case save one, identified as "M. Rose Parole Commissioner" on Johnson's complaint. The United States Marshals Service has attempted to serve process on this individual, but was unsuccessful because Johnson did not provide the Marshal's Service with a first name for the defendant. On October 15, 2010, the Court issued an order to show cause as to why M. Rose had not been served within 120 days of the filing of the complaint. To date, Johnson has neither responded to that order nor filed proof that he has served M. Rose. As such, all claims against M. Rose are dismissed pursuant to Rule 12(b)(5) for failure to serve process.

### III. Claims against the Division

Johnson brings this suit pursuant to § 1983. The Eleventh Amendment, through the doctrine of sovereign immunity, bars suits for damages in a federal court by private parties against a state, state agencies, and state officials acting in an official capacity, unless the parties consent to the suit or there is a statutory waiver. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 362 (2001); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). No such waiver is in effect here. Furthermore, a plaintiff in a section 1983 action cannot sue the State, its agencies, or its officers in their official capacities pursuant to section 1983, because such defendants are not "person[s]" pursuant to the statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002). Accordingly, Johnson's claims against the Division are not proper, and these claims are dismissed.

### IV. Claims against Babb and Estwick

Johnson alleges in his complaint that Babb and Estwick violated the Eighth Amendment's prohibition against cruel and unusual punishment by allowing him to enroll in Edgecombe despite his mental health problems.  It should be noted that although Johnson also alleged in his complaint that his placement on quarantine also constituted cruel and unusual treatment, he has not named any individual defendant who decided to place him in quarantine or oversaw his treatment while there.

Aspects of Johnson's case do not resemble the case of the average parolee because Johnson suffered the alleged injury at the hands of the state not when he was living in a private residence, but when he was living in a residential drug treatment program.  It is therefore likely that the defendants owed him a greater duty of care than they would owe someone who was required to live by the conditions set forth by the Division, but who lived at home.  *Cf. Jacobs v. Ramirez*, 400 F.3d 105, 106-07 (2d Cir. 2005).

Nonetheless, the Court not need delve into those weighty issues because even if Babb and Estwick had owed Johnson the same duty of care that they would owe a prison inmate, they would not have violated the Eighth Amendment.  "The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  "Yet not every lapse in medical care is a constitutional wrong."  *Id.*  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (brackets in original) (quoting *Estelle*, 429 U.S. at 104).  Thus "a prison official violates the Eighth Amendment only when two requirements are met":  (1) "the alleged deprivation of

adequate medical care must be sufficiently serious"; and (2) "the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 279-280 (internal quotation marks omitted).  A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998).  "[T]he subjective element of deliberate indifference 'entails something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

   No genuine issue of material fact exists with regard to either prong  for the simple reason that Johnson  has adduced no evidence that he has ever suffered from a serious psychological problem.  He never provided any documentation of his diagnosis to either Babb or Estwick, and he informed both that he was willing to forgo his medication in order to enroll in Edgecombe.  Johnson had already successfully completed a stint in Edgecombe several months previously, apparently without any serious psychological incident, so there was no basis for them to believe that allowing Johnson to enroll in Edgecombe would seriously detract from his mental health.  Furthermore, to the extent that Johnson claims to have suffered psychological harm from his treatment at Edgecombe, it appears that these psychological effects were triggered by his quarantine and subsequent loneliness.  Babb and Estwick could not have predicted at the time that Johnson entered into the treatment program that he would later be quarantined with flu-like

symptoms. Even if Johnson suffered from a mental illness, Babb and Estwick had no reason to believe that it was serious. Babb and Estwick's motion for summary judgment is therefore granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [11] is granted. In addition, the claims against "M. Rose" are dismissed pursuant to Rule 12(b)(5). In light of Johnson's failure to participate in these legal proceedings and his flight from the jurisdiction, this dismissal is granted with prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: New York, New York

December 21, 2010

Richard J. Holwell

United States District Judge